The Court's decisions make clear that a trial court estimating the weight of unrecovered drugs for purposes of sentencing must err on the side of caution, and has proved using the lower estimate of a theoretical range and minimizing the potential for overestimating drug quantity by adopting the expert's most conservative figure. This Court reviews de novo the methodology employed to approximate drug quantity. The approximation in this case is particularly complex because the trial court approximated both the nature of the substance and its quantity, and in so doing, the trial court did not follow this Court's decisions. This is clear from two facts. First, the trial court issued an elaborate written opinion on sentencing in this case, which did not cite any of the controlling cases. Second, instead of erring on the side of caution and using conservative, reliable methods, the trial court chose the highest possible point on the range testified to by DEA agent Geary. Had the court followed this Court's rules, it would have found 92 grams. Officer Rooney, whom the trial court specifically found to be credible, testified in response to the government's questions on direct that his lower-end estimate of the size of each Exhibit 200 weighed 2.3 grams, and you can see he's suggesting that each object weighed about 23 grams in total. Go ahead. Exhibit 200 was just a piece of the drug that he found outside? Yes, Your Honor. You know, the cases that you cite, I think, it seems like Scalia and Jackson. Is that right? Are those the cases that you're citing? Sheo and Forrester. Well, there was also a couple of cases that involved gate code, where the government had access to all of the evidence, but chose only to use a disproportionate amount. Here, the government didn't have access to all of the evidence, because it was destroyed because it was, you know, apparently banked in against the car, and some of it was gone. So, I'm just wondering, does that make a difference? Sure, Your Honor. In Forrester and in Shield, and in the main cases that you cite, most of the drugs are not recovered. There are sampling cases that we also talk about further on in the brief. And the difference between the sampling cases and this case is that the defense in the sampling cases has the opportunity, if there are concerns, to test some of these cases. That's what I'm talking about. Because it seems like, Your Honor, the district court did not use a proper random selection procedure, because the district court used a convenient sample. Is that not what you're arguing? That's a subsidiary argument. The main argument is that Forrester and Shield require conservative... No, I understand that. And the citation to Jackson and the other cases goes to the point that it's not possible to say, based on recovering what the government claims is 2% of the sample, that all of the 448 grams were the same stuff. The fact that these particular things were crack cocaine doesn't mean that everything else was. In the way that it might if we have a free carload full of objects which are seized and one-tenth of 1% of them is checked and they all turn out to be marijuana. And if the defendant has a problem with that, they can check some of the other 99.9%. So that's what those cases go to. I think I've also argued that even if you use 92.6, if you added the amount you found at the house, you're still in the same place. That's not correct, Your Honor. If we go down to 92 grams of crack cocaine, we move 6 offense levels. And then what happens to the object found at the house? Well, that could conceivably get added in through the methodology provided in the sentencing guidelines. It's converted to marijuana and added back in. But... Why are you in doubt? A lot lower. Because? Because it's higher than 280.8 grams. But there apparently are penalties required. Well, that was one alternative. So there was one alternative formulation that was advanced in the trial court by the defendants. And that is, if this is tennis balls, what the trial judge did about it, and if it were tennis balls rather than baseballs, then that's one way that could ever come out. There's an argument in the SYT. Cocaine found. Excuse me, counsel. There's cocaine found in Jefferson's apartment. It was powder, wasn't it? Yes, Your Honor. So they found it. It's not rock. Well, it was a hard powder. But it was not cocaine-based crack for the purposes of sentencing. What I want to suggest to the court, and this is perhaps the most important point I'd like the court to consider, is that it's very, very hard for human beings to precisely measure objects at a distance by sight alone. And therefore, all size estimates where the objects cannot be directly measured whether it's described as a golf ball, a tennis ball, a baseball, a softball, or a lot, have to be evaluated in light of this court's warnings about the necessity of caution and reliability. In particular, the S.H.I.E.L.D. decision. This court said that it's necessary for any methodology used for the court to consider what the margin of error might be if in a situation where a person is looking at a distance and an object, estimating its size, and then thinking, okay, I'm assuming that that's made of a certain substance, and therefore I'm going to calculate its weight. There's a large margin of error intrinsically, necessarily, in that methodology. Another point. Agent Geary testified. What's your argument? I mean, the alternative. What is the alternative? What's your argument? The alternative that I'm arguing is that Officer Brady, whose testimony was found to be critical by the trial court, said we have an actual substance that we covered in Exhibit 200. How much, what is the relationship in size between that object and the objects you saw being disposed of? And he said, well, Exhibit 200 is about what I saw disposed of on four separate occasions. It was 10 to 12 times larger than Exhibit 200. He's reliable. That estimate is a reliable, conservative estimate, and that pencils out to a total of 92 grams of crack cocaine, and that should be the basis of sentencing in this case. Another point that I want to make is that Officer Braley testified during direct examination by the government, but he thought the baseballs, that the objects were baseball sized. He said, and the reason why I would describe it as a baseball-sized baggie was because he was. What I saw was him gripping it with his entire hand, so he estimated that these objects were baseball-sized based on the shape of the hand. So this is yet another level of inference, another level of market theory, which turns out that golf, two golf balls, are actually wider than a baseball. So, yes. I think you heard me. Well, Your Honor, I think that the government properly asked that this court's contribution notice to the size of golf balls and the contribution notice to the size of baseballs in the trial court, so I would respectfully request that that be continued. Yes, the issue is the size of the hand. The size of the hand is actually larger. If someone is holding two golf balls together, that it is a baseball because the golf balls are wider. So if Officer Braley is evaluating the size of the hand and therefore extrapolating out what must be in the hand based on that estimate, what he saw, his honest testimony, which we embrace, reflects the possibility of a much, much lower amount than the court found. Indeed, it reflects the possibility of exactly the amount he testified to when he was asked to evaluate the relationship between what he saw and Exhibit 200. He's reliable. We endorse and embrace his testimony, and, therefore, the calculation should be reduced. Thank you. Thank you. May it please the Court. I'm Kevin Kosygin on behalf of the United States. And, Your Honor, when he brought those exhibits up, it reminded me of when we actually tried this case several years ago, and I think that's what a fellow counselor did to that. We had a trial on this case, and many, many days of testimony, and the trial court made factual findings and wrote in a 13-page order that he, that the cognitizing and cross-examination of the size is key here in this testimony, and he heard the impeachment evidence, and he decided that Brudy was credible and that he saw a baseball in his hands. And, actually, those exhibits were at trial as well. We have two versions, apparently, of Brudy's testimony, or Brudy's testimony. I can't remember if Brudy testified to both of these, but one was the whole baseball size and, you know, rocks of cocaine. But then we also have, and I think it was by your question, your review at the trial of the officer saying, well, here's what we recovered. How much larger was the amount in his hand, do you think? And I think in response, he said six times or ten times, whatever it was he said. And that's in the record. That's an estimation. And I guess my question for you is, in light of the cases that your opposed counselor is referring to, I think it's Kilby, Forster, and Shale, why wouldn't we require, under that pretty clear case law, that the district court should have used the equally or more reliable method of drug approximation that resulted in lower approximated drug quantities? There's a lot of statements in those cases saying that we should go on the more conservative route, and the district court judges should do the more conservative route. And we actually have one story in this case, and that's the defendant had a baseball in his hands, and that's what Brudy testified to. If I could redo the passage that Counselor refers to in terms of ratios, Officer Brudy's asked, you described what Mr. Jameson was fashioning as a baseball size, right? The answer is correct. Now, you've combined the sizes of the two exhibits that you have in front of you. How many more times bigger was the object that Mr. Jameson was fashioning? And Officer Brudy's response, I don't know how many times you'd have to times that to get to the size of a baseball. I really don't. I know the difference between the two substances was much greater. I mean, these are, to put it in my terms, these are fragments. You dragged it was really coming out. So we have the recipient witness is Officer Brudy. But there's another one that says it's six times or ten times greater, or what part of the transcript is that? There's another part where it gives actual number of times. Do you have that in front of you? Correct. That's the same dialogue. Well, then why aren't you reading that? Well, this is part of the same correspondence. Go to that part. Read that part. What he said was that he was asked, do you know the weight of the object? Have that in front of you. I do. Because that seems significant. I do have that. I have part of it here. It says Officer Brudy admitted he was legally obligated to provide the correct details of his report. In response to this question, your testimony is that you believe there were approximately four baseball-sized amounts of drugs left on the highway. No, my belief is that there were four baseball-sized packs full of substances that were dumped during the pursuit. And finally, it looks like Officer Brudy testified that the objects James discarded during the pursuit were probably five, six times larger than the exhibit that he was discussing. Is that what you have? Correct. I have that. And then I think the original question was, you know what, weight was the object that you observed. And he responded, the exact weight, I don't know. But the size from 101A is much larger than that. And I think our approach in our case was his observations of the precipient witness from a car like that, halfway from Jamerson are one thing. But asking him to make ratios and do math, that is like asking how many televines are inside a jar. It's a much different scope of his testimony than it was the precipient witness. Well, but what about Kilby, Forster, and Shale? How do you argue what those cases say? Those cases, I think there's two things. One, those cases are multiplier method-based cases, where you're dealing with three types of evidence. And they're conspiracy cases. You're dealing with dosage size, daily sales, and over a length of period of time. Here we're dealing with an officer that was in a car like the way, and on the stand he grabbed a baseball and said, this is the object I saw in the defendant's hand. And then you had expert testimony. And it was actually expert testimony that the defense agreed that he was an expert. And he had weighed this object, similar sized objects, 20 times. And said that he weighed 440 grams. An officer really testified exhibit 101A compared to what I saw. There's no quote. Exhibit 101A compared to what I saw was probably five, six times larger than that. I think it's at x for record 144. Right. Maybe a little bit more. And exhibit 200, maybe double that from 101A. And I guess you argue that this testimony is unreliable because it's about the weight of cocaine base, which Bruni doesn't have any expertise in. At least that's what it seemed like you were trying to argue. But I'm just trying to figure out why isn't his testimony simply about the size of what he saw relevant here. I think the court credited his testimony on its observations that day. I think when Officer Bruni said, Did he say that it was a baseball size? Did he say it was like a baseball? It was round, like a sphere, like a baseball, a solid sphere. And he let's see whether it was solid for one thing. And there was a testimony that even if it looks like a sphere, it's still not really a solid sphere. Did he say it was a sphere? Did he say it was the size of a baseball? Did he say it was the volume of a baseball? And there was actually a similar exhibit at a trial where he palmed the baseball on the stand and said, This is the size of the object I observed in the defendant's hand. That's different from saying that it is a sphere, a solid, like a baseball. Did it size to be a baseball? I think that's where we get to Agent Nairn's testimony about how crack cocaine is packaged. And it can be packaged where there are an ounce and then two smaller ounces and then pushed together. The object is really based on the individual trafficker and whether they push it together or do they have a hard chunk. How do they make their sales? And I think Agent Nairn. See, that's the problem. I mean, in some ways it seems more accurate to say, How much bigger than this is it? And he didn't see the actual object. He saw the person's hand holding the object. Well, I think he saw the object in the defendant's hand. But he also saw the object be destroyed. And he saw the chips flying off and hitting his car, bouncing on the road. I think when we're talking about a perfect sphere compared to multiple ounces pushed in the size of a sphere, we have expert testimony that the defense agreed was an expert on drugs. That is four ounces in quantity is 440 grams. And the court heard that testimony. And you have yourself asking, is that 144 or 145? Officer Rudy, now with respect to the first object that Mr. Jamerson dumped, how much larger or smaller is the object that Mr. Jamerson dumped in the combined sizes of exhibits 101, 8, and 200? And it seems like that's focused on the size. And I guess it's arguable. I mean, which is more, you know, reliable? Or you're arguing that it's what he saw with his hand while he was trying to crack it against the car versus what was found. And then how much times bigger was it? And it seems like our case law seems to suggest, as you guide us, that the district court, when you have even arguably equal ones, to do the one that's more conservative, do you argue that the multiplying how much times larger or smaller the object is would result in a lesser amount of drugs that he'd be held accountable for? I would just give you a chance to answer that question first, and then you can suss it out. I mean, is it true that if the calculation is made based on how much smaller or larger what was found that Officer Bruning testified to, that that would result in a lesser amount that the defendant would be held accountable for? Well, I think the 92 grams that the defense talks about is sort of almost impossible. One, in sentencing, they agreed that the object could not be the size of a golf ball. And that's what 92 grams is. It's actually smaller than four golf balls. Well, you keep focusing on the golf ball. I guess I'm going to ask you to just address that. The citations, the Jamerson cites in pages 25 and 26 of the opening brief that shows that various state and federal courts report that volumes of cocaine based the size of a golf ball have weighed anywhere from 6 grams to 67 grams. I guess, do you have a response to those cases? Doesn't that demonstrate that your reliance on the expert to determine the weight of cocaine based, though arguably reliable, may not be as reliable as using the actual weight of the actual cocaine bag based that was found in this case? I see that. I'm up for my time. Please answer. Okay. I think the golf ball size is kind of a red herring. The judge's report was based on the size of a baseball. And that was the object of the case. Answer my question. Just because you've been referring to golf ball size today, how do you respond to those cases on pages 25 to 26 of the Jamerson brief? Well, I don't think they were part of this case. And I don't know the facts. Do you understand that there's been a wide disparity when people refer to golf ball size amounts of drugs? Well, I think it's generality that people use when they see objects. And we've seen that in this case, too, as opposed to recovered fragments of, hey, look, it's kind of like a golf ball. But you want to rely on that versus the actual? Well, we want to rely on the object of the baseball, which the testimony was the court relied on. Okay. I have a question if you don't mind. Yes, sir. Okay. Counsel, would you concede that whether you rely upon Officer Rooney or Agent Neary both involved in this case? Yes, Your Honor. My last question would be that. No, that's not your answer. I've got your answer. And the district court relied upon, chose to rely upon Neary as opposed to Rooney for the best test. That's correct, Your Honor. And just one point I want to make on Judge Mordei's comments about seal Going forward, I feel like you've actually answered my question. I didn't intend to give you more time to argue the case. I apologize, Your Honor. Thank you very much. I would just note that an excerpt of record of 146, Officer Rooney was asked, your testimony today is that you believed that there was approximately four baseball-sized amounts of drugs left on the highway when you got off the shift that day, right? And his answer was no. As far as I know, he was very careful, and he never testified that they were baseball-sized amounts. He said that the baggie was roughly in the shape of a baseball, and he understood that based on inference of the size of the hand. So I think he was very careful and cautious to make that point. Counsel? Yes, sir. Suppose the panel were to agree with you, dictate for us right now the sentence directing the district court how to properly estimate and analyze the weight of the drug sentence case for sentencing purposes. Tell us what the sentence is. District court, here's what you should do. I think there's been a full and fair sentencing hearing with all kinds of evidence and every opportunity to bring it forward, and I would say that the sentence should say that Mr. Jameson should be resentenced, as he will be anyway under drugs minus two, based on a calculation of the weight of that substance no more than 92 grams. Now, I would love to say that that's the only thing that should be considered, but my colleagues here have made it clear from the beginning that the 92.6 grams of powder cocaine and there's some marijuana and there's some other things, and that would, I'm afraid to admit, have to be considered also, but as to the substance. Would we actually set back, I mean, if we've agreed with you, a number, or would we say directing the district court to use the method that's maybe equally reliable, but results in a lesser amount, and we have to determine what the heading is? Well, Your Honor, I would suggest that the court should look at this record and say, is counsel, defense counsel, correct that 92 grams is the number? Because if this case goes back, then either the number will be 92 grams or less, but if it's more than 92 grams, there's a decent chance that you'll be forced to reevaluate the question anyway, and so I would imagine that from your perspective, you would evaluate whether that's the right outcome. Do you want this panel to sentence your client? Well, you know, we could have time, Your Honor, that would be wonderful, but no, I don't want this panel to sentence my client. I want this panel on this particular factual issue, which is the facts are developed and the law is developed, and in my view, the answer is they have that application of the facts and the law leads to one answer, and that is the lowest, a conservative, reliable, reasonable estimate is 92 grams. Your Honor, is that okay? Okay, thank you very much, Your Honor. So now I'm going to turn the question over to your counsel, Judge Madison, in case the United States versus U.S. has been able to come on today.
judges: Hawkins, Berzon, Murguia